# 155-15

ORIGINAL

No_____

# COURT OF CRIMINAL APPEALS OF TEXAS

Ginnie Fay Roberts, Appellant

v.

The State of Texas

On Petition for Discretionary Review from

The Tenth Court of Appeals

IN NO. 10-14-00048-CR Affizming the Conviction in Cause No. F47843 from the 413th District Court of Johnson County, Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 12 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS.

MAY 12 2015

Abel Acosta, Clerk

## APPELLANT'S PETITION FOR Discretionary Review

Ginnie Fay Roberts. Pro Se
TDCJ# 1906777
Hobby Unit
742 fm 712
Marlin Tx 74661

List of Parties and Counsel


Appellant:                    Ginnie Fay Roberts, Pro Se
                              Hobby Unit 1906777
                              742 fm 712 3G 114.B
                              Marlin Tx 76661


Trial Judge:                  Hon. William C. Bosworth JR.


Assistant District Attorney
    at Trial:                 Mr. Matt Smid
                              Mr. Bryan Botkin
                              204 S. Buffalo Ave Suite 209
                              Guinn Justice Center
                              Cleburne Tx 76033


Defense Counsel at Trial:     Robert Littrell II
                              4 East Chambers St.
                              cleburne Tx 76033


Appellant's Counsel
on Appeal:                    Lane Rugeley
                              116. N. Caddo St
                              Cleburne Tx 76031

# Table of Contents

List of Parties and Counsel ........................... i

Table of Contents ........................... ii

List of Authorities ........................... 1,2

Statement Regarding oral Argument ........................... 3

Statement of the case ........................... 3

Grounds for Review / Argument ........................... ii, ii(A) ii(B)

1. Prosecutorial Mis conduct by consealing or withholding evidence in favor of the defendant

2. Prosecutorial misconduct by making statements that are designed to arouse public indignation, making improper or mis leading statements to the jury.

3. Ineffective Assistance of Council

4. Whether the evidence is legally sufficient to charge appellant for possession of methamphetamines 4-200 with intent to deliver when appellant did not live at the residence of 7125 Timber Rd Alvarado Tx 76009.

5. The evidence presented at trial is Legally insufficient to support a conviction for Delivery of marihuana to a minor.

6. Insufficient Evidence at trial to support the "Link" Notebook

## Argument

### Ground One

1. The prosecution erred in due process by withholding exculpatory evidence Brady vs. Maryland 373U.S. 83 (1963) on Carlee Roberts. The School she was attending was actually a private medical treatment facility that caters to troubled teens who have mental issues, Anger issues and they treat substance abuse. The Center is called the Excel program. ALSO the prosecution withheld C.R. Character White in CPS custody it was suppressed (AL Limone) which would have proved C.R. not a credible witness. Fed. R. Crim P. 16  Federal Rules of Evidence 405, 406

### Ground Two

2. The prosecution erred in making a statement in trial of " (Page 73 transcription)
Actual Quote: IN voir dire, I said to you that we want these kind of big punishment ranges IN Texas because Texas is so big and we want the local jury to get to voice what they think is right for our community... Then goes on to say And so we have no recommendation, we just leave it up to you to trust you.
Brady vs Maryland 373 U.S. 83 (1963)   Hernandez V State 340 S.W 3D 55

### Ground Three

3. Appellant was denied examination of All Evidence, witnesses that could have proved the character of C.R. Trial lawyer Failed not getting an Expert Hair Analysis witness for Appellant, Kindred v. Con/chem Inc 650 S.W-2D 61, Dickey vs. State 643 S.W-2D 386, 389 (Texas Crim) (App 1984)

11(A)

## Ground Three Con'd

3. Appellant was never offered the plea of 8 years - Trial lawyer knew of Affadavi7t from the owner of the home teking full Responsibility of said drugs and also stated. Appellant and daughter did not live there. per trial lawyer D.A. would not allow notorized AFFADAFFIT. - Thompson vs. State 95 L-BD508 Constitution of U.S. 6th amend. Article 10 U.D. HR. Article 11 U.O.H.R.

## Ground Four

4. On April 25, 2013 The state of Texas Childre Protective servics in writing acknowledged Appellant lived at 120 Happy Lane Whitney Texas 76692 ... Appellant came on to the scene At 7125 Timber Rd Alvarado Tx 76004 after the house was put on lock Down awaiting for a search warrant. DA Refused AFFAN from owner Rules of Evidence 901 vernon Ann Texas Rule Civ Proc Rule 193.7 vernon Ann Civst Apl 3737E

## Ground Five

5. On April 23, 2013 Appellant was court ordered with a twenty five minute window to take a hair follick (DNA). She tested Negative for THC which contradicts the testimony of C.R., CPS ms. Buker and the prosecution. C.R. tested positive on a urinalysis from a third party not cps.... The prosecution was saying delivery threw transfer (smoking). Texas Health and Safety C. § 481.122 Adelman v. state, 828 s.w. 20 at 421 Colliher 46 sw 3D at 247, Evans vs. Pollack 793. s.w. 2014 writ granted Constitution of U.S. 5th amend.

## Ground Six

6. Prosecution erred in trial and evidence is Legally insufficient in the only "Link" from a notebook .. finger prints are the distinctive pattern of lines on a human fingertip (DNA) the Latent print that was distorted the Expert Witness said he could not say it was Appellants. Prosecution erred in not allowing a hand writing analsis to be done no burden of Proof was given - Rules of Evidence 702-705 Expert Testimony State vs. Huddleston 164 sw 3d 711

i i (8)

# List of Authorities

1. Adelman v. State 828 sw 2d At 421 Colliher. 46 sw 3d At 247 ....... ii (B)

2. Article 10 of U.D.H.R. (Universal Declaration of Human Rights) ... ii (B)

3. Article 11 of U.D.H.R. (Universal Declaration of Human Rights) ... ii (B)

4. Brady vs. Maryland 373 U.S. 83 (1963) ... ii (A)

5. Constitution of the U.S. Fith Amendment ... ii (B)

6. Constitution of the U.S. Sixth Amendment ... ii (B)

7. Dickey vs. State 643 s.w. 2d 386, 389 (Texas Crim App 1984) ... ii (A)

8. Evans vs. Pollack 793 s.w. 2014 writ granted ... ii (B)

9. Federal Rules of Evidence 405, 406 ... ii (A)

10. Federal Rules of Evidence 702-705 Expert Testimony ... ii (B)

11. Federal Rules of Evidence 901 ... ii (B)

12. Federal Rules crim proc P.16 ... ii (A)

13. Hernandez vs. State 340 s.w. 3d 55 ... ii (A)

pg 1

14. Kindred vs. Con1 chem Inc 650 s.w. 2d 61

i i (A)

15. State vs. Huddleston 164 s.w. 3d 711

i i (B)

16. Texas Health and Safety c. 5481.122

i i (B)

17. Thompson vs. State 95 VBd 808

i (B)

18. Vernons Ann Texas Rule civ. proc rule 193.7

i (B)

19. Vernons Ann Civ, St. Apt 3737c

i i (B)

To The Honorable Court of Criminal Appeals:

Comes now Ginnie Fay Roberts, Appellant, Pro Se and files this Petition for Discretionary Review of the opinion of the Court of Appeals which Affirmed both convictions in this case

## Statement Regarding Oral Argument

Appellant waives oral argument unless desired by this Court

## Statement of the Case

Appellant was Convicted in the 413th District Court of Johnson County, Texas, the Hon. William Bosworth, Jr. presiding, for Possession of a Controlled Substance with Intent to deliver 4-200 grams (Enhanced) Count One, and Delivery of marijuana to a minor (Enhanced) Count Two. The jury found Appellant guilty of both offenses, and punishment was assessed in the accordence with the law Count One 75 years, Count two 60 years in the Texas Department of Criminal Justice Inst. Div.

## History of the Case

Appeal was to the tenth Court of Appeals at Waco, Texas. The judgement of conviction was affirmed on both counts. and opinion rendered on January 8, 2015. No motion for rehearing was filed. A motion for extention was filed on feb 3, 2015 and Roberts 1PDR granted for April 10, 2015. A second motion was filed March 30, 2015 and was granted for May 10th and here comes now the full petition for Disc Review May 10, 2015...

3

## Prayer for Relief

Appellant prays respectfully that upon review, the criminal Courts of Appeals reverse the judgement of conviction and render an aquittal be entered.

Respectfully submitted

*Ginnie Fay Roberts*

Ginnie Fay Roberts Pro Se
Hobby Unit 1906777
742 FM 712
Marlin TX 76661

## Certificate of Service

I Ginnie Fay Roberts do hereby certify a true and correct copy of this PDR Petition for Discretionary Review to the Clerk of the Court of Criminal Appeals P.O. Box 12308 Austin, Texas 78711, and a copy of letter notifying the Filing of this Petition for Discretionary Review to District Attorneys office Guinn Justice Center 204 S. Buffalo cleburne, Tx 76033 by dropping said documents into U.S. mail Box located on the Hobby Unit (located in Vegatableasea) on this 7th Day of May 2015.

*Ginnie Fay Roberts*
Ginnie Fay Roberts Pro Se

# Appendix

1. Please see attached opinion of Court of Appeals and judgement. these are the only copies I have and are able to get here in prison.

2. Copy of Sworn Affadavit from Owner of Home

3. Copy of Drug money refunded from task force

4. Copy of DNA Hair follicle negative for THC.

5. Copy of Acknowledgement of address from CPS

6. Copy of Board of Pardons and Paroles Sworn Affadavit

7. Report from CPS on Carlee Roberts A,b,c,D,E

# LANE E. RUGELEY
## RUGELEY & ASSOCIATES, P.C.
### ATTORNEYS AT LAW
### 16 NORTH CADDO STREET
### CLEBURNE, TX 76031
### On the Northeast Corner of the Historic Courthouse Square
### Tel: 817-641-4055   Fax: 817-641-0003

January 13, 2015

CMRRR 7012 2210 0001 1733 8150

Ginnie Faye Roberts
TDJC# 1906777
Lane Murray Unit
1916 N. HWY 36 By Pass
Gatesville, TX 76596

**Re: Opinion - NO. 10-14-00048-CR, In the Court Of Appeals**
**Tenth Judicial District, Waco, Texas**

Dear Ms. Roberts:

I have enclosed a copy of the opinion and judgment that I have received from the Court of Appeals. The Court of Appeals affirmed the trial court's decision in your case. The next level of your appeal would be to the Court of Criminal Appeals in Austin, Texas. Unlike the Court of Appeals, the Court of Criminal Appeals is not required to hear an appeal. The Court of Criminal Appeals has discretionary review authority in criminal cases. Should you decide to proceed with an appeal of your case, you will need to file a *pro se* Petition for Discretionary Review (PDR) within thirty (30) days of the date of the opinion of the Tenth Court of Appeals pursuant to Texas Rule of Appellate Procedure 68, a copy of which I have also included.

The date of the opinion was January 8, 2015. Therefore, a PDR would have to be filed with the Court of Criminal Appeals no later than February 7, 2015. The mailing address for the Court of Criminal Appeals is P.O. Box 12308 Austin, Texas 78711.

Sincerely,

Lane E. Rugeley



# COURT OF APPEALS
## TENTH DISTRICT OF TEXAS

January 8, 2015

No. 10-14-00048-CR

GINNIE FAY ROBERTS

v.

THE STATE OF TEXAS

From the 413ᵗʰ District Court
Johnson County, Texas
Trial Court No. F47843

## JUDGMENT

This Court has reviewed the briefs of the parties and the record as relevant to the issues raised in this proceeding and finds that no reversible error is presented. Accordingly, the trial court's judgments of February 13, 2014 are affirmed.

A copy of this judgment will be certified by the Clerk of this Court and delivered to the trial court clerk for enforcement.

PER CURIAM

SHARRI ROESSLER, CLERK

By: ___Nita Whitener_____
Deputy Clerk



To Whom it May Concern

My name is DAVID Paul McKinney I am 66 yrs old Borned on February 11, 1947 Being in a clear and sober mind - free of all drugs do freely & willingly swear that anything & everything ever found in my home any form of police or authority figure is mine and mine alone. I take total and full responsibilty for said things. They are mine and mine alone. And futhermore do swear before the Police and Courts thas Miss Ginnie Fay Roberts had no knowledge or possession of said drugs. She was not living in my home nor had She I atleast 30 day Nor did her daughter Carle Roberts a very troubled 15 yr. old Girl.

Once again as this is the third time I have written a simular statement

I take full and total responsiabilty excuse me if any of the spelling is wrong please except this statement as is inspite of misspelled Words

David McKinney

PAMELA KAY MARIS
Notary Public
STATE OF TEXAS
My Comm. Exp. January 28, 2015

Pamela Kay Mari
Notary Public of Texas

EX 1
A-

Acct # 0320-00-0000-2100
Refund Ref Case # STOP 13035.1
Invoice date 1/31/2014 $339.37

Vendor 4294173

RETURN IN 5 DAYS TO:
**DEBBIE RICE, CCT/CIO**
**Johnson County Treasurer**
**2 North Main Street, Room 312**
**Cleburne, Texas 76033**



Vendor: 4294173   DAVID C. MCKINNEY

Net Amount: $339.37



**Johnson County**
2 N Main Street
Cleburne, TX 76033-5500
817-556-6305

First Financial Bank, NA
PO Box 537
Cleburne, TX 76033-0537

Operations Clearing

Check No: **97039**

| Vendor No. | Date | Check No. | Net Amount |
|---|---|---|---|
| 4294173 | 02/10/2014 | 97039 | $***339.37 |

PAY     ***THREE HUNDRED THIRTY NINE DOLLARS AND 37/100

TO THE    DAVID C. MCKINNEY
ORDER     1800 RIDGEMAR
OF        CLEBURNE, TX   76031

HEAT SENSITIVE
RUB AREA TO VERIFY

TO THE    DAVID C. MCKINNEY
ORDER     1800 RIDGEMAR
OF        CLEBURNE, TX   76031

UNITED STATES POSTAGE
$ 00.48
02 1R FEB 10 2014
0002001289
MAILED FROM ZIPCODE 76033

# AIR AND/OR URINE CUSTODY AND CONTROL FORM


**Quest**
**Diagnostics**®
800-877-7484

SPECIMEN ID NO.

## STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

LAB ACCESSION NO.

A. Employer Name, Address, I.D. No.

B. MRO Name, Address, Phone and Fax No.

C. Donor SSN or Employee I.D. No.

D. Donor Name: Last:     First:

E. Donor ID Verified: ☒ Photo ID ☐ Emp. Rep. _____

F. Specimen Type: ☐ Urine   ☒ Hair (please check source): Head___ Leg___ Chest ___ Underarm___ Other_____

G. Reason for Test: ☐ Pre-employment (1) ☐ Random (3) ☐ Reasonable Suspicion/Cause (5) ☐ Post-Accident (2) ☐ Promotion (22)
☐ Return to Duty (6)   ☐ Follow-up (23) ☐ Other (specify) (99) _____

H. Drug Tests to be Performed:

I. Collection Site Name: _____   Collection Site Code:

Address: _____   Collector Phone No.: _____

City, State and Zip: _____   Collector Fax No.: _____

## STEP 2: COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☐ Yes ☐ No, Enter Remark

Specimen Collection: ☐ Split ☒ Single ☐ None Provided (Enter Remark)   ☐ Observed (Enter Remark)

REMARKS

**STEP 3:** Collector affixes specimen seal(s) to specimen(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5.

## STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified in the certification section on Copy 1 of this form was collected, labeled, sealed, and released to the Delivery Service noted in accordance with applicable requirements.

X _____
Signature of Collector

Time of Collection ___ AM ___ PM

**SPECIMEN(S) RELEASED TO:**
☒ Quest Diagnostics Courier ☐ FedEx
☐ Other _____
Name of Delivery Service Transferring Specimen to Lab

(Print) Collector's Name (First, MI, Last)

Date (Mo./Day/Yr.)

**RECEIVED AT LAB:** X _____
Signature of Accessioner

(Print) Accessioner's Name (First, MI, Last)

Date (Mo./Day/Yr.)

**Primary Specimen Bottle Seal Intact**
☐ Yes
☐ No, Enter Remark _____

**SPECIMEN BOTTLE(S) RELEASED TO:**

## STEP 5: COMPLETED BY DONOR

I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; each specimen container used was sealed with a tamper-evident seal in my presence; and that the information and numbers provided on this form and on the label affixed to each specimen container is correct.

X _____
Signature of Donor

(PRINT) Donor's Name (First, MI, Last)

Date (Mo./Day/Yr.)

Daytime Phone No. (___) _____

Evening Phone No. (___) _____

Date of Birth ___/___/___   Mo.   Day   Yr.

*negative for MJ......*



# TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES

COMMISSIONER
John J. Specia, Jr.

Ginnie Fay Roberts
120 Happy Lane
Whitney, TX 76692

Mailing Date: 4/25/2013

Re: Case# 42700913; Notice of Findings of CPS Investigation

Dear Ginnie Fay Roberts :

The Department of Family and Protective Services (DFPS) has completed its investigation of alleged abuse or neglect reported on 4/3/2013 involving one or more children in your family and made the following findings:

| Alleged Perpetrator | Alleged Type of Abuse or Neglect | Alleged Victim | Finding |
|---|---|---|---|
| Roberts, Ginnie F | Neglectful Supv. | Roberts, Carlee J | Reason to Believe |
| Mckinney, David | Neglectful Supv. | Roberts, Carlee J | Reason to Believe |
| Roberts, Ginnie F | Physical Abuse | Roberts, Carlee J | Ruled Out |

We will be offering services to your family to address problems or risks identified during the investigation. If we have not already done so, we will be contacting you or another member of your family in the near future to discuss these services.

## How Findings are Determined.

- A finding of **"Ruled Out"** means that, based on the available information, it was reasonable to conclude that the alleged abuse or neglect did not occur.
- A finding of **"Reason to Believe"** means that a preponderance of the evidence supports that the alleged abuse or neglect did occur.

## How Certain Types of Abuse or Neglect are Defined.

**Neglectful Supv.** includes the following acts or omissions by a person:

- placing a child in or failing to remove a child from a situation that a reasonable person would realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities and that results in bodily injury or a substantial risk of immediate harm to the child; or
- placing a child in or failing to remove the child from a situation in which the child would be exposed to a substantial risk of sexual conduct harmful to the child; or
- placing a child in or failing to remove the child from a situation in which the child would be exposed to acts or omissions that constitute abuse under Subdivision (1)(E), (F), (G), (H), or (K) committed against another child.

**Physical Abuse** includes the following acts or omissions by a person:

- physical injury that results in substantial harm to the child, or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm; or
- failure to make a reasonable effort to prevent an action by another person that results in physical injury that results in substantial harm to the child; or
- the current use by a person of a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner or to the extent that the use results in physical injury to a child; or
- causing, expressly permitting, or encouraging a child to use a controlled substance as defined by Chapter 481, Health and Safety Code.

**Right to Administrative Review.** You have the right to request an administrative review of any "Reason to Believe" finding made against you or your minor child. To request an administrative review, complete and submit the attached form within forty-





## Hearing Report (cont.)
### REVOCATION-Not Waived

| Name | TDCJ # | SID # | VIOLATION # |
|---|---|---|---|
| ROBERTS,GINNIE FAY | 01399892 | 04163967 | 10796494 |

**At or About:**     Alvarado, Johnson County, Texas

**Complainant/Adjudication/Other:**

Conviction: Cause No. F47843 Del Marihuana To Minor Count II in the 413th District Court Johnson County Texas. Sentenced on 02/12/14 to 60 Years TDCJ-CID.

**Offender Plea:**     Deny

Conclusion: Sustained

I conclude OFFENDER did violate rule.

**Evidence:**     Exhibit A (Sworn Affidavit, Certificate of Parole/Conditions, Violation Report, Court Document/Judgment & Sentence Count II, Court Documents/Judgment & Sentence Count II, and Commitment Inquiry.

Exhibits 1-5.

OFFENDER testified: The two allegations were based on hearsay from her 15 year old troubled daughter. Her daughter reported that OFFENDER smoked marijuana with her on a regular basis. Presented Exhibit 4 & 5, a hair follicle test, that covers a 90 day period prior to being administered. One test was done by the courts (4/23/14) and the other (5/31/14), OFFENDER paid for. OFFENDER never tested positive for marijuana on either test, but her daughter did. OFFENDER admits that she had been using methamphetamine and tested positive for it. When the search warrant was conducted at MCKINNEY'S residence, they did not find any marijuana, but methamphetamine was found in MCKINNEY'S bedroom in a chester drawer. The search warrant did not have a name and specifically stated they were looking for marijuana, but none was found. They tried to say that OFFENDER lived there, but Child Protective Service verified that OFFENDER lived at 120 Happy Lane in Whitney. All this came about her 15 year old daughter, who does not always tell the truth. If she does not get her way, she gets angry. OFFENDER and her daughter had a disagreement and her daughter told Child Protective Service all these things and CPS ran with it, based on OFFENDER'S criminal history. Her daughter told CPS she lived at MCKINNEY'S residence, but she actually lived with her grandmother. The following reasons were given by the court for OFFENDER being guilty: 7125 Timber Road was known as a drug house, appellant was dating owner, 4.15 grams of methamphetamine, scales, money and repackaging material was found in a small treasure box. OFFENDER'S daughter stated that the treasure box belonged to OFFENDER, which it did not. The box belonged to Wayland GORMAN, MCKINNEY'S roommate who is on the run. Also, a meth pipe was found on top of a woman's jacket.

**Type of Charge**     Felony

**Status of Charge**     Convicted [C]

---

**Hearing officer comments**

To protect the confidential information from improper disclosure as required by Board Rule 147.1(c), Exhibit (4 & 5) and the original recording are sealed and shall not be released to the public.

---


## Hearing Report (cont.)
REVOCATION-Not Waived

| Name | TDCJ # | SID # | VIOLATION # |
|---|---|---|---|
| ROBERTS,GINNIE FAY | 01399892 | 04163967 | 10796494 |

## FACT FINDINGS AND CONCLUSIONS

**Evidence Standard**
Preponderance of Evidence

A.  I find Offender is under the authority of Board of Pardons and Paroles and is subject to the rules and conditions of his/her administrative release
B.  I make the following findings in regard to the allegations:

### Group A

**Rule # 2 Offense against state laws. I shall commit no offense against the laws of this state or of any other state or of the United States.**

NCIC Category: POSS CS PG 1 >=4G<200G
**On or About or Since:** 04/09/2013
**At or About:** Alvarado, Johnson County, Texas
**Complainant/Adjudication/Other:**
   Conviction: Cause No. F47843 Poss Cont Sub WID 4-200G Count I in the 413th
   District Court Johnson County Texas. Sentenced on 02/12/14 to 75 Years TDCJ-ID.
**Offender Plea:** Deny
Conclusion: Sustained
I conclude OFFENDER did violate rule.

**Evidence:**     Exhibit A (Sworn Affidavit, Certificate of Parole/Conditions, Violation Report, Court Documents/Judgment & Sentence Count I).

Exhibits 1-3

OFFENDER testified: That she was not present at the residence when this took place. The owner of the residence, David MCKINNEY and his roommate were there. OFFENDER Presented Exhibit 1 A-B and 2. OFFENDER reports receiving Exhibit 2 from the roommate while in jail, but he never did what he said he would do. MCKINNEY received a ten year sentence and the roommate is still on the run. OFFENDER reported that she did not live at the residence, but MCKINNEY was her boyfriend. OFFENDER lived in Whitney and worked in Hillsboro. Exhibit 3 was refunded back to MCKINNEY, which was the amount confiscated with the drugs, because Johnson County could not determine it was drug money. When money is found with drugs, they charge a person With intent to Deliver, but the money was refunded to MCKINNEY.

**Type of Charge**     Felony
**Status of Charge**   Convicted [C]

### Group B

**Rule # 2 Offense against state laws. I shall commit no offense against the laws of this state or of any other state or of the United States.**

NCIC Category: DEL CS/MARIJ TO MINOR
**On or About or Since:** 04/08/2013

Information contained herein may be confidential and privileged and shall not be disclosed except as allowed by law.


| Name | TDCJ # | SID # | VIOLATION # |
|---|---|---|---|
| ROBERTS,GINNIE FAY | 01399892 | 04163967 | 10796494 |

## ADJUSTMENT PHASE

**Parole Officer**
Introduced adjustment statement.

**ISF / SAFPF Eligibility**
ISF Ineligible - Serving sentence


SAFPF Ineligible

**Offender**

OFFENDER testified: The she did great under supervision. She reported, was home for visits, paid her fees and only had one positive UA, which occurred six months after release. She attended AA/NA weekly and worked for Motel 6 as a desk clerk for almost three years in Hillsboro.

PAROLE PLAN

Virginia Hill-Mother
120 Happy Lane
Whitney, Texas 76692
Ph# 254 694-8042

Information contained herein may be confidential and privileged and shall not be disclosed except as allowed by law.

(A)

| | |
|---|---|
| **Case Name:** Roberts,Ginnie | |
| **Case #:** 42700913 | |
| **Child's Name:** Carlee J'Don Rose Roberts | **DOB:** 12/16/1997 |

## CHILD'S SERVICE PLAN
## Review with PAL Asmt and Ther. Asmt

Carlee has a rebellious and independent nature. She stated she has a history of smoking marijuana and K2, as well as cigarettes. Since being in the home, Carlee was caught smoking a cigarette with some other students after school. Carlee initially lied when the foster parents confronted her, but then later told them the truth. The foster parents and therapist are working with Carlee to encourage her to verbalize her feelings and remain honest.

It was found out that Carlee smoked marijuana at halftime at the high school football game. When confronted by the foster parents, Carlee admitted to smoking marijuana once since being in the home. The foster parents had Carlee write out her goals and five things that make her happy in order to help her think of alternatives to using drugs and healthier coping mechanisms.

### Emergency Conditions

FPS has determined that one of the following emergency conditions continues to exist for this case and, therefore, services continue to be necessary:




1. A child is at risk of abuse or neglect, as determined by FPS;
2. A child has been removed from his/her home and placed in FPS care; or
3. A child formerly in FPS care is at-risk of being returned to FPS care.



| | |
|---|---|
| **Case Name:** Roberts,Ginnie | |
| **Case #:** 42700913 | |
| **Child's Name:** Carlee J'Don Rose Roberts | **DOB:** 12/16/1997 |

## CHILD'S SERVICE PLAN
### Review with PAL Asmt and Ther. Asmt

Carlee reported she will be starting a new job at a haunted house.

*Appropriateness and Safety of Placement / Expected Outcomes*
Carlee is currently placed in group foster home. Carlee is well adjusted in the home and to foster family. Carlee enjoys being in the home and has established good relationships with foster parents.

Carlee's placement is not within 50 miles of parent's residence. Carlee will have visits with mother once Ms. Roberts is released from jail and has negative drug screens. The placement is the least restrictive placement available to Carlee at this time.

Carlee shares a room with three other girls of her age group. Carlee is within close proximity to the caregivers at all times. She has age appropriate games in the placement. The placement is clean and appropriate with no safety hazards to note. At this time, the placement is in Carlee's best interest until the Department seeks relatives for possible placement.

*Progress/Efforts Made Toward Permanency*
The current permanency goal is Independent Living concurrent Relative/Fictive Kin, Conservatorship. Carlee is currently placed in a group therapeutic foster home. Carlee has expressed to the Department that she does not wish to be returned to any family members and would like to stay in her current placement until she turns 18 years old. The Department will continue to seek family members who are willing and able to care for Carlee if in the event Carlee would like to placed with a relative.

Ms. Roberts attended the Adversary Hearing on 4/23/13. The judge ordered for Ms. Roberts to submit to hair follicle test same day before 5p. Ms. Roberts testified to the court that she has not used any kind of drugs for a very long time. She was unable to provide a specific time frame. The judge ordered Ms. Roberts not to have any visits with Carlee until she had a negative drug screen. Ms. Roberts appeared cooperative and expressed she would like to work services in order for Carlee to be returned in her care. The Department received results from hair follicle test and Ms. Roberts tested positive for Methamphetamines and Amphetamines and was not allowed to have visits with Carlee.

Ms. Roberts attended Status Hearing on 6/7/13. Ms. Roberts reported that was employed and had not used any drugs. The judge ordered for Ms. Roberts to submit UA same day before she could have visit with Carlee. The Department received results from UA and Ms. Roberts tested negative for all drugs. Before the Department could set up visits with Carlee and Ms. Roberts, Ms. Roberts was incarcerated for charges of Manufacturing/Delivering Controlled Substance. Her release date is unknown at this time.

Ms. Roberts did not attend Permanency Hearing on 10/2/13 due to her incarceration. It is unknown at this time what her release date is. The District Attorney had visit with Carlee in December regarding Ms. Robert's criminal case. There is a possibility Ms. Roberts will do a minimum of 10 years in prison if convicted.

Carlee's father Mr. Jones attended court and was ordered to participate in DNA testing to determine if he is Carlee's biological father. Results were received in August 2013 and it was determined that Mr. Jones is Carlee's biological father. Mr. Jones has not participated in services recommended by the Department, but hopes to start services soon so he can have visits with Carlee. Although he is not able to have Carlee placed with him, he would like to remain in contact with her and build relationship.

The Department received hair follicle results which stated Ms. Roberts tested positive for Amphetamines and Methamphetamines.

*Visitation/Contacts Summary*

| | |
|---|---|
| **Case Name:** Roberts,Ginnie | |
| **Case #:** 42700913 | |
| **Child's Name:** Carlee J'Don Rose Roberts | **DOB:** 12/16/1997 |

## CHILD'S SERVICE PLAN
### Review with PAL Asmt and Ther. Asmt

Carlee currently does not have visits with her mother as Ms. Roberts is currently incarcerated. Carlee's last visit with mother was 8/8/13. Carlee is allowed to write letters to mother through caseworker. Ms. Roberts has written letters to Carlee, but Carlee has not written any back at this time.

Carlee will have visits with father once day and time is set up with Mr. Jones and worker.

Carlee currently has monthly visits with her older sibling and has regular phone contact with him as he currently resides in Denton.

Carlee currently has monthly face to face visits with worker. Worker is to ensure Carlee is safe and all needs are being met.

*Child's Culture Heritage*
Carlee is Caucasian and currently resides in a diverse placement. Carlee reported she does not come from a religious background and did not have a preference.

*Discharge Planning*
Carlee will remain in her current placement until an appropriate relative is identified and approved for placement, or the judge makes a decision regarding the legal case with her parents.

Carlee has expressed to the Department that she does not wish to return to any family members. She is doing well in her current placement and would like to stay until she turns 18 years old .

*Relationship Issues*
Carlee is not in a relationship at this time, but will continue to practice healthy boundaries, interpersonal relationships, pre-social communication skills, human reproduction and sexually transmitted diseases.

*High Risk Behaviors*                                    *And 2012 —*
Due to Carlee's suicide attempt in June 2013, foster parents must supervise Carlee on a regular basis. The following safety plan has been put in place:

1.Carlee will be within eyesight or earshot of a foster parent or caregiver at all times during waking hours
2.Carlee will report to her foster parents if she is having suicidal or self-harming thoughts.
3.Foster parents will keep all belts, knives, shoelaces, and razors in their bedroom (which is locked and inaccessible to children). Shoes requiring shoelaces will be checked out from foster parents and returned after use.
4.Foster parents have removed the bar from the closet in Carlee's bedroom and all clothes will be folded and stored in drawers.
5.The foster mother will sleep on the sectional sofa in the living room with Carlee should she express, or display, any concerning behaviors that would not require hospitalization or an immediate psychiatric response but may necessitate additional observation overnight.
6.Carlee will have weekly counseling with her therapist.
7.Carlee will have monthly visits with her psychiatrist. The foster parents will ensure that Carlee takes all psychotropic medication as prescribed.
8.Foster parents will transport Carlee to a psychiatric facility or emergency room, or call 911, if she expresses suicidal thoughts or self-harming behaviors.

In August 2013, Carlee was caught stealing items from Walmart while the foster family caregiver was shopping for the foster children in the home. The foster parents had Carlee return the items to the store and speak with a manager. The store did not take further action. The foster parents also consulted Paula Agulefo and this behavior was addressed in therapy.

(c)

**Time Frame for Completion:** Ongoing


## BEHAVIORAL

**Child's Behavioral Strengths:** Carlee enjoys being engaged in many activities and interacts well with other children in the home.

**Child's Behavioral Needs:** Carlee needs stability and consistency in her living environment. She needs for limits to be clear and for age-appropriate and fair consequences to be immediately and consistently implemented.

**Previous Short Term Goals and Objectives:** Provide appropriate supervision, therapeutic support and structure. Foster parents will set and enforce age-appropriate consequences for negative behaviors or poor choices. Foster parents will reward positive behaviors.

**Progress:** Generally, Carlee and her foster siblings are interacting well together. Carlee has had verbal altercations with her foster sisters in the home. She is working on showing maturity and respectfully verbalizing her frustrations with her foster parents and foster sisters.

Carlee is working on appropriate boundaries with strangers. There was an incident reported that Carlee went up and smelled strangers' armpits while they were at a theme park. Another incident occurred when Carlee was at the eye doctor and began telling a stranger that all the kids she was with were in foster care and that she did not want to be alive anymore.

The following safety plan was implemented for Carlee on December 4, 2013:

1. Carlee will be within eyesight or earshot of a foster parent or caregiver at all times during waking hours
2. Carlee will report to her foster parents if she is having suicidal or self-harming thoughts.
3. Foster parents will keep all belts, knives, shoelaces, and razors in their bedroom (which is locked and inaccessible to children). Shoes requiring shoelaces will be checked out from foster parents and returned after use.
4. Foster parents have removed the bar from the closet in Carlee's bedroom and all clothes will be folded and stored in drawers.
5. The foster mother will sleep on the sectional sofa in the living room with Carlee should she express, or display, any concerning behaviors that would not require hospitalization or an immediate psychiatric response but may necessitate additional observation overnight.
6. Carlee will have weekly counseling with her therapist.
7. Carlee will have monthly visits with her psychiatrist. The foster parents will ensure that Carlee takes all psychotropic medication as prescribed.
8. Foster parents will transport Carlee to a psychiatric facility or emergency room, or call 911, if she expresses suicidal thoughts or self-harming behaviors.

In August, Carlee was caught stealing items from Walmart while the foster family caregiver was shopping for the foster children in the home. The foster parents had Carlee return the items to the store and speak with a manager. The store did not take further action. The foster parents also consulted Paula Agulefo and this behavior was addressed in therapy.

Carlee has a rebellious and independent nature. She stated she has a history of smoking marijuana and K2, as well as cigarettes. Since being in the home, Carlee was caught smoking a cigarette with some other students after school. Carlee initially lied when the foster parents confronted her, but then later told them the truth. The foster parents and therapist are working with Carlee to encourage her to verbalize her feelings and remain honest.

| Case Name: Roberts,Ginnie |
| --- |
| Case #: 42700913 |
| Child's Name: Carlee J'Don Rose Roberts | DOB: 12/16/1997 |

## CHILD'S SERVICE PLAN
## Review with PAL Asmt and Ther. Asmt

safe, nurturing, family home environment for Carlee to allow her to communicate her need for support and have that need or feeling validated by the foster parents or other adults involved in her care. The foster parents will also continue to provide Carlee with reassurance, stability and appropriate affection.

*Treatment Services: Waking Hours*
During school, Carlee usually wakes up around 6:00a to get ready for school. On weekends, foster parent reported Carlee will wake up around 11a. Carlee reported she would like to get up earlier to make it on time for breakfast which ends at 9a.

*Treatment Services: Addition for Mental Retardation Services*
Not applicable.

Preparation for Independent Living Needs

*Transition Plan Needs*
Carlee will continue to build a relationship with her foster family. The foster parents and school will provide Carlee with activities that will promote family and team building. Carlee will receive her driver's license and obtain her high school diploma. The foster home will allow Carlee to participate in family meals, chores, and activities where ideas and family values will be shared.
The foster parents will encourage Carlee to talk with them when she is having issues with someone in the home or at school.
Carlee will continue to develop positive role models to facilitate long term relationships.
The foster parents will guide Carlee in choosing acceptable friends that will be a positive influence for her.
Carlee will participate in PAL classes to prepare her for independent living. Carlee has received information beginning PAL classes and is scheduled to start in January 2014. Foster parents will continue to work with Carlee in completing PAL.

*Transition Plan Goals for Adult Living / PAL Post Care Objectives*
Carlee will need to complete high school, obtain a driver's license, obtain employment and complete PAL classes. Carlee would like to attend college once she graduates high school.
Foster parents will continue in providing a home for Carlee and meeting all of her basic needs. They will begin teaching her independent living skills discussed in Transition Plan.

*Psychological/Intellectual/Mental Health Needs*
Carlee was diagnosed with Depression and Anxiety prior to being removed. Carlee attempted to commit suicide by overdosing on pills. She briefly attended the Excel Center in Fort Worth. Carlee was smoking marijuana to help with her anxiety in which was provided to her by her mother.



It was reported that Carlee attempted to commit suicide in June 2013. Foster parent found rod in closet half way down with belt tied to it. Carlee was admitted to Timberlawn. Since then, Carlee has not had any recent suicidal thoughts. Carlee is currently taking medication for Depression and Anxiety.

Carlee continues to take medication for Depression as she has recently been feeling depressed. Therapy sessions were reduced to bi-weekly, but recently increased to weekly per Carlee's request. Carlee has been doing very well and has not had any issues with wanting to commit suicide or marijuana use.

*Recreation, Community Interaction, Religious Needs*
Carlee expressed an interest in softball and will look into playing for her school next school year. Carlee will be able to develop her interests and hobbies in current placement.

inmate Roberts 19067??
obby Unit 3G 114 B
42 fm 712
arlin Tx 7666l

LEGAL
MAIL

LEGAL
MAIL

To The Clerk of the Cour
ATTN: Abel Acosta,
Court of Criminal Appeals
OF TEXAS
P.O. Box 12308 Capitol St
P.O.
XAS